# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN SANCHEZ BOGARIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | No. 1: 22-cv-01463-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## I.    INTRODUCTION

Plaintiff Ruben Sanchez Bogarin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Doc. 1. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born on June 4, 1978, and he was 42 years old when he filed his claim for DIB on August 5, 2020. (Administrative Record ("AR") 15, 361). In his application, he alleged a disability onset date of June 20, 2019, based on his "neuropathy, type 2 diabetes, high cholesterol, triglycerides, HBP [high blood pressure], and chiari malformation." (AR 15, 158, 218). Plaintiff has a high school education, and he previously worked as a tractor-trailer truck driver. (AR 27).

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 11.)

A.     **Relevant Evidence of Record**[2]

    1.     **Medical Evidence**

Plaintiff's medical records indicate he suffers from various joint pains, complications from his Diabetes mellitus type two, and a history of headaches.[3] Plaintiff has also complained of ongoing lethargy. (*See, e.g.*, AR 342).

On August 27, 2019, Plaintiff saw Sumeet Bhinder, M.D., and reported pain in his legs and feet, which had been present for roughly nine months and prevented him from working. (AR 314). A joint examination revealed no distinct synovitis, though Dr. Bhinder noted some tenderness over a few joints. (AR 316). Dr. Bhinder referred Plaintiff for x-rays, which later showed heterotopic ossification at the right ischial spine. (AR 289, 316). Dr. Bhinder later referred Plaintiff for an MRI of his pelvis, which showed degenerative change involving the bilateral sacroiliac joints, disc protrusion and facet hypertrophy at L5-S1, resulting in mild-to-moderate canal and moderate bilateral foraminal stenosis. (AR 297). Dr. Bhinder noted Plaintiff did not meet the criteria for rheumatoid arthritis. (AR 313).

In May 2020, Plaintiff complained of right arm pain, and Dr. Alvarez noted tenderness and a reduced range of motion in Plaintiff's right shoulder. (AR 471). Dr. Alvarez referred Plaintiff for shoulder imaging and instructed him to exercise, diet and keep a log of his blood sugars. (AR 471). Subsequent imaging of Plaintiff's right shoulder showed mild chronic hypertrophic degenerative changes of the AC joint and a small benign bone spur. (AR 334, 359). Felix Trapse, M.D., prescribed Cyclobenzaprine and Hydrocodone for Plaintiff's right shoulder pain and instructed him to exercise. (AR 337). Plaintiff again visited Dr. Alvarez on May 13, 2020, reporting upper extremity pain. (AR 498).

Plaintiff has also reported pain and swelling in his hands. (AR 314). On September 10, 2019, Plaintiff rated his bilateral hand pain as a seven out of ten in severity. (AR 476). Dr. Carlos

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] In 2012, doctors diagnosed Plaintiff with a Chiari malformation. He underwent surgery in 2013, and he suffered from a postoperative infection after the surgery. (AR 361). However, there are no follow-up visits with healthcare providers after 2013 related to the malformation. (See AR 20, 376-377).

2

Alvarez, M.D., noted Plaintiff had a decreased range of motion in his hands but that Plaintiff was already scheduled for neuropathy testing. (AR 476-477). Plaintiff underwent a nerve conduction student and electromyography on his upper extremities in September 2019. (AR 298). The results were "consistent with a severe bilateral Carpal Tunnel Syndrome" and axonal left ulnar neuropathy. (AR 300). Plaintiff returned to Dr. Alvarez on October 3, 2019, for bilateral wrist pain, and Dr. Alvarez noted a decreased range of motion. (AR 474). Dr. Alvarez increased Plaintiff's prescription for Lyrica and referred him to an orthopedic surgeon. (AR 475). Plaintiff followed-up with Dr. Alvarez in January 2020, and while Plaintiff complained of joint pain, Dr. Alvarez noted a full range of motion and no other adverse findings. (AR 472).

The study found Plaintiff underwent a neurological consultation on June 22, 2021. (AR 432). The provider, Sheila Mendoza, N.P., concluded "the degree of polyneuropathy appears mild in the upper extremities" and the "mild chronic neurogenic changes in distal muscles [are] most likely related to polyneuropathy." (AR 431). At his August 10, 2021, follow-up, Plaintiff complained of weakness in his knees and tingling/pain in his extremities. (AR 429). He rated his pain as an eight out of ten and reported his symptoms worsened at night. (AR 429). Plaintiff stated the pain prevented him from performing his daily activities though he showered and changed on his own. (AR 429). The neurological exams again reflected no neurological deficits. (AR 430). Mendoza referred Plaintiff to physical therapy, a hand specialist and a back specialist. (AR 431).

The record demonstrates Plaintiff's Diabetes is generally uncontrolled. At a May 14, 2020, appointment with Dr. Trapse, Plaintiff admitted he had been out of his prescription insulin since December 2019. (AR 339). In December 2020, Sharon Vejvoda, N.P., performed Plaintiff's annual physical and noted high glucose leels. (AR 468). On April 28, 2021, Plaintiff's A1c reached 13 percent. (AR 518). Plaintiff reports headaches related to his diabetes. (AR 345).

On July 9, 2021, Raynado Garcia, M.D., completed a medical source statement related to Plaintiff's conditions. (AR 441-45). Dr. Garcia opined that Plaintiff could sit for 20 minutes at a time and stand for 30 minutes at a time. (AR 443). Dr. Garcia also noted Plaintiff would need a 20-minute

3

break every two hours because of his muscle weakness, chronic fatigue, pain/paresthesias, numbness and the adverse effects of his medication. (AR 443). He also stated Plaintiff would be off-task 25 percent or more of the day, and he would be absent more than four days per month. (AR 444). He concluded Plaintiff was incapable of even "low stress" work. (AR 444).

### 2.     Opinion Evidence

Roger Wagner, M.D., performed a consultative examination in November 2020. (AR 361-365). Plaintiff's chief complaints included Diabetes mellitus type 2, a Chiari malformation and low back pain. (AR 361). Plaintiff reported he could walk half a mile and sit for between 60 to 75 minutes at a time, though bending and lifting exacerbated his back pain. (AR 361-362). Dr. Wagner noted that Plaintiff could drive, shop and perform his own activities of daily living without assistance. (AR 362). Plaintiff suffered from some early neuropathy connected to his diabetes. (AR 364). Dr. Wagner concluded that Plaintiff had no limitations related to standing and walking with normal breaks. (AR 365). He also found Plaintiff could occasionally lift and carry 50 pounds, and he could frequently lift and carry 25 pounds. (AR 365). Dr. Wagner also concluded Plaintiff could climb, stoop, crouch and reach overhead with his right arm frequently. (AR 365). Dr. Wagner assigned no other workplace limitations. (AR 365).

In November 2020, state agency consultant S. Lee, M.D., assessed Plaintiff's claim at the initial level. (AR 54-66). After reviewing the evidence, Dr. Lee found Plaintiff could perform medium work (AR 64) with some limitations. Dr. Lee found Plaintiff could occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds. (AR 62). They also found Plaintiff could stand or walk with normal breaks for six out of eight hours per workday, and he could sit with normal breaks for roughly six out of eight hours per workday. (AR 62). In February 2021, state agency consultant G. Lee, M.D., found Plaintiff was limited to light work with various postural limitations while reviewing the record on reconsideration. (AR 70-79). Dr. G. Lee found Plaintiff could occasionally lift or carry 25 pounds and could frequently lift or carry 10 pounds. (AR 77).

### 3.     Plaintiff's Testimony

Plaintiff testified to lifting 50 pounds while working in his previous position, though he

4

reported occasionally struggling with it. (AR 41). Plaintiff reported leaving his previous position because his legs often felt tired, though now he struggles with pain in his hands. (AR 42). He stated he suffers from two to three headaches a week, which date back to his childhood. (AR 43). He reported that he is in pain "all day" and has no strength. (AR 45).

### B. The ALJ's Decision

The Commissioner denied Plaintiff's application for benefits initially on November 19, 2020, and again on reconsideration on March 1, 2021. (AR 62, 87). Plaintiff requested a telephonic hearing before an Administrative Law Jaw (an "ALJ"), and the parties attended a hearing on September 9, 2021. (AR 43).

In a decision dated September 77, 2021, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 15-28). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 20, 2019 (step one). (AR 17). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the sacroiliac (SI) joint, diabetes mellitus, bilateral carpal tunnel syndrome, and Chiari malformation. (AR 17). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found Plaintiff was limited to light work as defined in 20 C.F.R. 404.1567(b) except that:

> the claimant (1) cannot climb ladder and scaffolds; (2) can frequently climb stairs and ramps; (3) can stoop, kneel, crouch and crawl; (4) can frequently reach overhead with the non-dominant upper extremity; and (5) can frequently handle, finger and feel with the bilateral upper extremities.  Further, the claimant (1) can understand, remember and carry out simple instructions; (2) can only make simple, work-related decisions; and (3) cannot work at a strict production rate such as the rate required to work on an assembly line.

(AR 19).

At steps four and five, the ALJ found that Plaintiff was unable to perform his past relevant work as a tractor-trailer truck driver (Dictionary of Occupational Titles ("DOT) Number 904.383-010) because it requires a greater exertional level than Plaintiff's impairments will allow.  (AR 27).  The ALJ concluded that considering his age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (AR 17).  Those jobs included Marker (DOT Number 209.587-034), Sorter (DOT Number 569.687-022) and Box Bender (DOT Number 920.687-018).  The ALJ concluded Plaintiff was not disabled under the Social Security Act.  (AR 28).

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 12, 2022.  (AR 1).  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.  LEGAL STANDARDS

#### A.  Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their]

6

previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV. DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ erred by (1) disregarding Dr. Garcia's opinion, (2) failing to account for Plaintiff's fatigue on his RFC, and (3) discounting his subjective

complaints.  For the reasons explained below, the Court finds the ALJ did not commit legal error and the opinion is supported by substantial evidence.

**1.      The ALJ Did Not Err in Evaluating Dr. Garcia's Opinion**

**A.      Legal Standard**

Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 404.1520c(a)–(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources.").  Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations.  Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it]

9

considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id.* § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id.* § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id.* § 416.920c(c)(2).

> As the Ninth Circuit also observed,
>
> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id.* (quoting § 404.1520c(b)(3)). *See also id.* § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Garcia's opinion.

### B.  Analysis

Plaintiff contends the ALJ failed to properly evaluate Dr. Garcia's opinion because the ALJ did not "craft a logical bridge from the evidence to her conclusion." (Doc. 14 at 10). When addressing the persuasiveness of Dr. Garcia's opinion, the ALJ wrote the following:

> First, I acknowledge that Dr. Garcia has enjoyed a treating relationship with the claimant, but this is not the only consideration in assessing the statement's persuasiveness. Second, the statement is not well supported as it merely lists the claimant's symptoms of fatigue, pain and numbness in the upper extremities and does not provide specific support for the opined-to limitations. For example, there is no specific support for why the claimant can only sit, stand and walk for less than two hours in a workday or needs breaks every two hours for 20 minutes. It is notable that at the consultative examination the claimant reported he could sit for 60-75 minutes at a time (Exhibit 5F, p. 3). Third, the statement is not consistent with Dr. Garcia's treatment records, which consistently document normal physical examinations other than in July 2021, which showed decreased range of motion of the neck due to pain and 4/5 muscle strength in the upper extremities (see Exhibit 12F, pp. 2-5, 63, 66, 68, 73, 75, 80). Further, the statement is not consistent with the longitudinal record, which shows conservative treatment during the relevant time period. It is notable that the neurological examination less that than a month prior to the date of the statement found the claimant had normal muscle strength throughout the upper extremities and normal grip strength (see Exhibit 10F, p. 5). For these reasons, I find this opinion is not well supported, not consistent with the longitudinal record and not persuasive.

(AR 25-26).

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Garcia's opinion. With regard to supportability, Dr. Garcia provides little to no explanation of how he reached his ultimate conclusions. (*See* AR 442-445). The perfunctory report does not connect any suggested limitations to a particular condition. Where Dr. Garcia was prompted characterize to the nature, location, frequency, precipitating factors, and severity of Plaintiff's pain, he only wrote, "pain in [unintelligible], tingling, daily increase with use of hands." (AR 442). Dr. Garcia suggests Plaintiff's medications cause drowsiness and confusion, but it is not clear which medications do so or to what extent. (AR 442). Plaintiff attempts to buttress Dr. Garcia's opinion by citing past treatment records as supporting the report, but Dr. Garcia himself did not provide any such citations in his report.

With respect to the opinion's consistency with other evidence, the ALJ properly found Dr. Garcia's opinion was inconsistent with other medical evidence in the record. The ALJ noted the consultative examiner opined Plaintiff could sit for 60 to 75 minutes at a time, which was more than three times the time Dr. Garcia found Plaintiff could tolerate. (AR 26, 443). The ALJ

11

also pointed to the fact that Dr. Garcia's treatment records regularly showed normal physical examinations, which would not support the limitations he prescribed. (AR 25). The ALJ also pointed to the neurological examination conducted less than a month before Dr. Garcia prepared his report which found Plaintiff had normal muscle strength throughout his upper extremities and a normal grip strength. (AR 26, 433-435). The ALJ also noted Plaintiff's treatment had been conservative. (AR 26). Plaintiff contends the ALJ improperly considered some of his treatment "conservative" because a number of his ailments, including his diabetes and neuropathy, because they are not the types of conditions amenable to surgery. (Doc. 14 at 11). This argument is unavailing. Doctors regularly prescribed Plaintiff medication and a healthy diet and exercise, which are conservative treatments. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits," and thus constitute "conservative treatment."); *see also*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (finding physical therapy, anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset were conservative treatments for lower back pain and diabetes). Ultimately, the ALJ appropriately discounted Dr. Garcia's opinion as a "check-the-box" form which did not explain the provider's findings. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("We have held that the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (*superseded on other grounds* by 20 C.F.R. § 416.920(a)).

**2.   The ALJ Did Not Err by Evaluating Plaintiff's Fatigue and its Impact on His RFC**
   **A.   Legal Standard**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a). It reflects the most that a claimant can do despite their limitations. SSR 96-8p, 1996 WL 374184, at *1. In

formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective"). Therefore, an ALJ errs when providing an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 416.946. The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and their decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**B.    Analysis**

Plaintiff next contends the ALJ erred by failing to account for Plaintiff's claims of fatigue and lethargy when calculating the RFC. (Doc. 14 at 12). Plaintiff alleges that despite acknowledging the reported fatigue, the ALJ provided no analysis as to how it affected the RFC determination. (*Id.* at 13).

The ALJ did not fail to account for Plaintiff's fatigue when formulating his RFC. Plaintiff did not include fatigue or lethargy as a condition limiting his ability to work in his application (AR 218), nor did he include it in his chief complaints in his consultative examination with Dr. Wagner. (AR 361). While the record shows, and the ALJ acknowledged, that Plaintiff did on occasion complain of fatigue and lethargy, he noted he had experienced this fatigue for years (including while working). (AR 342). While Plaintiff cites the hearing testimony to further argue Plaintiff suffers from constant fatigue and lethargy, Plaintiff only

13

stated that there are days that he sleeps all night and "[t]hen in the morning I just want to keep on sleeping because I'm like real tired," (AR 48) and that he left his previous employer because "I mean I would feel tired, my whole legs would feel like real tired, like when you run, when you run and when you go to the gym and you run and you can't run anymore and you feel like tired. That's how I feel." (AR 42). The record also shows Plaintiff did not complain of fatigue or lethargy in multiple appointments. (AR 334, 338, 429, 432, 447-448, 468 (explicitly denied fatigue), 470, 472, 474, 476, 511, 513). Plaintiff also fails to suggest what other limitations would have been appropriate. Plaintiff has not demonstrated the ALJ erred by failing to include any additional limitations for Plaintiff's fatigue and lethargy.

### 3. The ALJ Did Not Improperly Discount Plaintiff's Subjective Complaints

#### A. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[5] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

---

[5] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 18 at 12).

14

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

**B.      Analysis**

Since the ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591. Plaintiff argues "[t]he ALJ's general summary of evidence offers no finding or conclusion as to what evidence undermines which portions of Plaintiff's alleged limitations."[6]

The ALJ properly discredited Plaintiff's subjective complaints. Plaintiff first identified and recounted Plaintiff's subjective complaints from the hearing testimony. (*See* AR 20). The ALJ then noted Plaintiff's subjective complaints were inconsistent with the medical evidence in the record, which is sufficient to undercut subjective testimony. *Chaudhry v. Astrue*, 688 F.3d 661, 672–73 (9th

---

[6] The only specific subjective complaint the Plaintiff contends the ALJ failed to consider is Plaintiff's assertion that "she [sic] has to change positions frequently, and had limited ability to sit, stand, or walk for long periods. Ar. 25. The ALJ also acknowledged Plaintiff's reported difficulties with remembering, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others. Ar. 25." (Doc. 14 at 14-15). Plaintiff did not testify to any difficulties with remembering, completing tasks, concentrating, understanding, following instructions, or getting along with others. This statement appears to be in error.

Cir. 2012). For example, the ALJ found that while Plaintiff complained of worsening function of his hands, examinations showed a normal range of motion of the hands, wrists and fingers. (AR 26). The ALJ also noted the Plaintiff underwent conservative treatment for his headaches, including prescription medications, which undercuts his testimony. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Burch*, 400 F.3d at 681 (holding that ALJ is permitted to consider lack of treatment other than medication in his credibility determination). Lastly, the ALJ noted Plaintiff can carry out various daily activities, which may be a clear and convincing reason to discount a claimant's subjective allegations. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002)

The Court finds the ALJ provided specific, clear and convincing to discount Plaintiff's subjective testimony. To the extent Plaintiff is unsatisfied with the ALJ's analysis, "ALJS are not required to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Court finds the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms.

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Ruben Sanchez Bogarin.

IT IS SO ORDERED.

Dated:   **December 20, 2023**          /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE